**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2024**

# In the Court of Appeals of Georgia

A24A1017. A&M HOSPITALITIES, LLC et al. v. MI-044 ALIMCHANDANI.

MILLER, Presiding Judge.

This is the fourth appearance of this case before this Court in this protracted dispute involving the dissolution of a partnership. See *A&M Hospitalities, LLC v. Alimchandani*, 363 Ga. App. 531 (871 SE2d 290) (2022) ("*Alimchandani III*"). In this appeal, A&M Hospitalities, LLC, JDS&J Enterprises, LP, David Motley, Jane Motley, Motmanco, Inc., Motmanco, LLC, JPM Advertising, Inc., and DJ Land & Development, LLC ("the defendants") appeal from the trial court's final order directing that certain fees be paid to the receiver and the auditor from the property

that was held in the receivership .[1] For the reasons that follow, we reverse the order directing that the receiver be compensated from the property that was held in the receivership. We vacate the trial court's order appointing the receiver and the order awarding fees to the auditor, and we remand the case to the trial court to determine the appropriate fees to be paid to the auditor for the work he performed during the time he validly served as an auditor. We otherwise affirm the trial court's final order.

The facts of this case were previously set forth by this Court as follows:

> Alimchandani and Jane and David Motley jointly created A&M in 1998 to develop and operate a Hampton Inn in Lake Park, Georgia. Originally, Jane Motley owned a 75 percent interest in A&M and Alimchandani owned 25 percent. From the beginning, operational control and decision making for A&M was vested with Jane Motley, who was designated A&M's manager. In 2006, half of Jane Motley's 75 percent interest was transferred to David Motley, and then the interests of Jane and David Motley were both transferred to JDS&J Enterprises, LP, a limited partnership comprising of Jane and David Motley and their

---

[1] The defendants initially also sought review of the portion of the order that confiscated $4.6 million in corporate assets and the court's failure to tax costs against Alimchandani. The parties subsequently entered into a settlement agreement and have agreed to withdraw those enumerations of error.

children. At the same time, David Motley was made a co-manager of A&M with Jane Motley.

In October 2017, Alimchandani filed the instant lawsuit against the defendants, seeking the judicial dissolution of A&M and raising claims of breach of fiduciary duties and violations of Georgia's Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-14-1 et seq. In her complaint, Alimchandani alleged that between 2008 and 2014, the Motleys misappropriated, wasted, and abused A&M's assets, failed to make required distributions to her as a partner of A&M, failed to provide her with notice of the transfer of Jane Motley's interest to David Motley and JDS&J Enterprises, LP, failed to provide her with required financial information, threatened the employment of Alimchandani's husband (a hotel operations manager at A&M), failed to hold annual meetings, and failed to communicate with her or deal in good faith. Alimchandani alleged that this conduct occurred in an apparent effort to freeze her out of A&M and to transfer business away from A&M to other companies owned by the Motleys and in which Alimchandani did not have an ownership interest.

At the same time that she filed the complaint, Alimchandani also filed a motion for the appointment of a receiver and related injunctive relief, alleging that she

would be "subjected to immediate and irreparable injury, loss and damage" if A&M was not placed in a receivership.

On November 22, 2017, the defendants moved to compel arbitration pursuant to the arbitration clause in the parties' Operating Agreement. The plaintiff opposed the motion, and the trial court denied it without explanation in July 2018. On January 17, 2018, while her opposition to the defendant's motion to compel arbitration remained pending, the plaintiff switched gears and filed a demand for arbitration with AAA.

In July 2018, the trial court appointed Christopher Cohilas as "receiver" "for the purposes of audit and discovery," ordering "that Cohilas was to receive 'reasonable compensation' for his services, paid by A&M." Following the August 2018 AAA arbitration, the arbitrator issued a final award on September 28, 2018, finding in favor of the defendants on all claims and awarding them damages in the amount of $95,093.52, which included $70,800 for attorney fees. On October 1, 2018, the defendants moved to confirm the award, and on December 28, 2018, the plaintiff moved to vacate it.

On November 30, 2018, the plaintiff filed an amended complaint seeking judicial dissolution of the company, appointment of a receiver, and other equitable relief. Meanwhile, the defendants had appealed the limited receiver order, and on May 15, 2019, this Court affirmed the appointment, "concluding that based on the language of the order, the

trial court had actually appointed Cohilas as an auditor, not a receiver, and that the appointment was not an abuse of discretion."

During the pendency of the appeal, the defendants filed a motion to clarify the appointment order. Upon remand on June 14, 2019, the defendants moved for summary judgment, arguing that all of the plaintiff's claims were or could have been asserted in the arbitration. The record does not reflect a ruling on the defendants' summary judgment motion.

On October 7, 2019, the trial court issued an order ("the special master/auditor order") clarifying Cohilas's appointment, explaining that Cohilas

> was appointed as an auditor and special master as those terms are contemplated and authorized by OCGA §§ 9-7-1, 9-7-2, 9-7-3, and Uniform Superior Court Rule 46. Specifically, the court vested Cohilas with authority to, among other things: conduct an accounting of A&M; hear motions, allow amendments, and pass upon all questions of law and fact; address all pretrial and discovery matters; monitor implementation of and compliance with all orders of the court, and he is permitted to impose upon a party any non-contempt sanction provided by OCGA §§ 9-11-37 and 9-11-45; conduct all trial proceedings and make and recommend findings of fact on all issues to be decided by

5

the court without a jury; and engage in ex parte communications with the parties, counsel, and the trial court for certain purposes. The special master/auditor order also restated the payment provision in the initial order, with minor changes.

Thereafter, on October 23, 2019, the plaintiff moved for leave to file the SAC [second amended complaint] adding several causes of action against the then-existing defendants and adding as parties MotmanCo., Inc.; MotmanCo, LLC; JPM Advertising, Inc.; and DJ Land & Development, LLC. On December 6, 2019, after the defendants filed a mandamus petition in superior court, and more than a year after the defendants moved for confirmation of the award, the trial court confirmed the arbitration award. The defendants appealed the special master/auditor appointment order on December 6, 2019, and the plaintiff appealed the confirmation on December 17, 2019.

On February 17, 2020, Cohilas entered an order granting the plaintiff's motion for leave to file the SAC. On June 1, 2020, the defendants filed an arbitration demand with AAA demanding that the plaintiff arbitrate the claims raised in her SAC and moved to stay the litigation pending arbitration. On June 17, 2020, the plaintiff moved to stay arbitration. On August 13, 2020, the trial court entered an order staying arbitration and denying the defendants' motion to stay the litigation, finding that defendant A&M had waived its purported right to compel arbitration by

"failing to challenge the portion of the court's 2018 order denying arbitration on appeal."

On October 1, 2020, the defendants filed a motion to disqualify and recuse the trial judge, alleging that he had directed the superior court clerk to not transmit the record to this Court even though the record in *Alimchandani II*[2] was ready. On November 13, 2020, the trial court denied the motion without assigning the recusal motion to another judge.

On January 26, 2021, the trial court appointed a receiver [, Michael Lambros,] "to oversee A&M's assets, accounts, and all other interests currently owned by A&M, including all of its subsidiaries" and to turn over to him

> all assets, wherever located, in their entirety and unaltered, including but not limited to A&M's hotels, properties, assets, M3 accounting software, documents, books and records, checks, certificates of deposit, financial statements, bank accounts, financial instruments, money, receivables, keys to any and all security boxes and the exact location of said security boxes, and equipment.

In the order, the trial court concluded that "there is a clear and urgent need for a receiver because there is a significant risk that A&M's

---

[2] *A&M Hospitalities, LLC v. Alimchandani*, 359 Ga. App. 271 (856 SE2d 704) (2021) ("*Alimchandani II*").

7

corporate assets, which are 25 percent owned by the plaintiff will be dissipated," noting a prior $6 million transfer from A&M to defendants MotmanCo. and JDS&J. The defendants filed [a] notice of appeal . . . on January 29, 2021.

On March 16, 2021, this Court issued its opinion in *Alimchandani II*, affirming the arbitration confirmation order but reversing the appointment order, holding that Cohilas was disqualified as a special master for a multitude of reasons and that he was performing "fundamentally incompatible duties at odds with the role of a special master." This Court also held that the trial court erred by requiring the defendants to pay Cohilas's auditor fees prior to final judgment.

On May 6, 2021, before the remittitur in *Alimchandani II* was issued, the trial court entered a sua sponte order to "address" this Court's March 16, 2021 opinion and "provide guidance to the parties." Therein, the trial court "formally removed" from Cohilas any special master responsibilities in light of the appointment of a receiver, noting that the court would perform any additional judicial functions going forward. The court also addressed the auditor fees, stating that contrary to this Court's holding, the defendants had not been previously required to advance payments for fees to Cohilas; instead the prior fee awards "were 'interim allocations' which the court will ultimately consider and assess in a final judgment" as "intended by the statutory framework."

(Citations, punctuation, and footnotes omitted.) *Alimchandani III*, supra, 363 Ga. App. at 532-536.

The defendants moved to vacate the order appointing a receiver and to dissolve the receivership. The defendants also moved for judgment on the pleadings, arguing that Alimchandani's claims were barred by res judicata because of the arbitration proceedings, and the trial court denied these motions. The defendants appealed, and this Court reversed the orders and remanded the case for further proceedings. *Alimchandani III*, supra, 363 Ga. App. at 532. Specifically, we first determined that Alimchandani's SAC was barred by res judicata as a result of the arbitration proceedings. Id. at 537-539 (1) (b). Second, we concluded that the trial court erred by failing to reassign the motion to recuse to another judge, and we remanded the case with direction that the case be reassigned to a new judge. Id. at 543 (2). Lastly, we concluded that the "case [was] now over, with the exception of determining fees for Cohilas and the special master," and that "all orders issued subsequent to the order denying the defendants' motion to recuse, including the order appointing a receiver, [were] void" based on our conclusion that the plaintiff's SAC was barred by res judicata. Id. at 543 (3).

9

On remand, Lambros filed a "motion for direction," requesting direction as to whether he should continue to act as the receiver pending the Supreme Court of Georgia's resolution of Alimchandani's petition for certiorari, and the trial court entered an order directing Lambros to maintain "the status quo of the receivership" and act as a receiver until the court received the remittitur. The defendants later moved for entry of final judgment, for Cohilas, Lambros, and Alimchandani to repay the money they received from A&M, and for costs to be taxed against Alimchandani. The court entered a final order directing the defendants to make final payments from the property held in the receivership to Cohilas and Lambros, taxing $26,984.50 in costs against Alimchandani, and directing Lambros to pay A&M bank accounts into the court registry and for 25 percent of those funds to be paid to Alimchandani. The court declined to order Cohilas and Lambros to return any funds. This appeal followed.

1. First, the defendants argue, among other things, that the trial court erred by ordering Lambos to maintain his status as the receiver in light of this Court's holding in *Alimchandani III*. The defendants further argue that because Lambros' appointment

was void, he was not entitled to compensation from the property that was held in the receivership.[3] We agree.

(a) First, we conclude that the trial court lacked jurisdiction to enter the order directing Lambros to maintain his "status quo" and to continue to act as receiver.

It is well settled that "[a]n appellate court maintains jurisdiction over a case until it has issued the remittitur and the remittitur has been received and filed in the clerk's office of the court below. Only then does the trial court regain jurisdiction to take further action with respect to the judgment appealed." (Citation omitted.) *Temple v. Hillegass*, 344 Ga. App. 454, 454-455 (2810 SE2d 625) (2018). If a trial court enters an order with respect to the judgment on appeal, the order is a nullity and is void. Id. at 455. See also *American Plumbing Professionals, Inc. v. ServeStar, LLC*, 367 Ga. App. 233, 233-234 (885 SE2d 255) (2023) (stating that "*we cannot ignore the nullity of a trial court's decision*," and that we cannot affirm an order that is a legal nullity "even if the record supports the court's action") (citation and punctuation omitted; emphasis supplied).

---

[3] The defendants also initially argued that a distribution that Lambros made to the plaintiff in May 2021 was invalid, but the defendants have withdrawn that claim pursuant to the settlement agreement.

Here, the January 26, 2021 order appointing Lambros as receiver was on appeal before this Court in *Alimchandani III*. See *Alimchandani III*, supra, 363 Ga. App. at 532 (stating that one of the orders that the defendants were appealing from was the trial court's order granting the plaintiff's motion to appoint a receiver). We reversed the trial court's order and determined that Lambros' appointment was void. Id. at 543 (3). The trial court, however, entered an order before the remittitur in *Alimchandani III* was received, which directed Lambros to maintain the "status quo" and to continue to act as receiver.[4] Because the clerk's office had not yet received the remittitur when the trial court entered its order, the trial court lacked jurisdiction at the time it ordered Lambros to continue to act as a receiver.[5] See *American Plumbing Professionals, Inc.*, supra, 367 Ga. App. at 234 (holding that the trial court lacked jurisdiction to enter a

---

[4] The trial court entered its order on June 20, 2022, but the remittitur was not filed in the clerk's office below until February 23, 2023.

[5] As previously stated, this is the fourth appearance of this case before this Court, and we note that this is the second time in this protracted dispute that the trial court entered an order regarding an issue that was the subject of an appeal before the remittitur from that appeal was received by the clerk's office below. See *Alimchandani III*, supra, 363 Ga. App. at 536 n.16 (stating that the trial court lacked jurisdiction to enter the May 2021 order regarding Cohilas' responsibilities because the clerk's office had not yet received the remittitur from *Alimchandani II*). Going forward, the parties and the trial court should take the time to become familiar with appellate jurisdiction rules and procedures so as to eliminate the need for future appeals in this matter.

second summary judgment order where the remittitur had not yet returned from the first appeal); *Temple*, supra, 344 Ga. App. at 454-455 (trial court lacked jurisdiction to enter a second order dismissing an appeal where the order was entered before the trial court received the remittitur).[6]

(b) We further conclude that the trial court erred by ordering that Lambros be compensated from the property that was held in the receivership.

> It is the general rule that, where the appointment of a receiver is without legal authority, improper, or inequitable, the parties at whose instance the receiver was appointed and, not the receivership fund, are liable for the expenses of the receivership, and parties who avail themselves of the advantages of an existing receivership to preserve the property subject to their claims must contribute toward the expenses of the receivership.

*United Bonded Warehouse v. Jackson*, 208 Ga. 552, 553 (3) (67 SE2d 761) (1951).

Here, the trial court ordered that Lambros be paid "from the assets of the receivership estate." But as stated above, we previously determined in *Alimchandani III* that the trial court's order appointing Lambros as the receiver was void. See *Alimchandani III*, supra, 363 Ga. App. at 543 (3). And, as previously stated, the order

---

[6] In light of this conclusion and our conclusion in *Alimchandani III* that the order appointing Lambros as receiver was void, we agree with the defendants that the reports Lambros made as receiver are also void.

directing Lambros to continue to act as a receiver was a nullity because it was entered before the clerk's office received the remittitur for *Alimchandani III*. Because we determined that Lambros' appointment was improper, Lambros was not entitled to any compensation from the property that was held in the receivership, and thus the trial court erred by ordering for him to be compensated from this property. And in light of this conclusion, it necessarily follows that the defendants are entitled to reimbursement of any funds that they paid to Lambros from the receivership property, and any funds that they paid to Lambros for his receiver fees.

2. Next, the defendants argue that the trial court erred by reappointing Cohilas as an auditor and by ordering that he be compensated from the property held in the receivership. We conclude that the defendants have failed to show error in regard to Cohilas' alleged reappointment but that the trial court erred by awarding fees to the extent that the fees were for the entirety of the work he performed in this dispute.

(a) First, as to the defendants' claim that the trial court "reappointed" Cohilas, we have not located any such order from the trial court reappointing Cohilas. Although the trial court's final order states that Cohilas had been appointed by a separate order, the only other order in the vast record pertaining to Cohilas'

appointment that we have found, which the defendants also identify, is an order that was entered on October 7, 2019, nunc pro tunc to July 18, 2018. But that order was previously addressed and reversed on appeal,[7] and although the defendants reference certain remarks by the trial court at the May 16, 2023 hearing,[8] the defendants do not point to anything in the record where the trial court entered an order reappointing Cohilas as an auditor. Thus, in the apparent absence of an order demonstrating that Cohilas was "reappointed" in this matter, this claim does not present a basis for reversal.[9]

---

[7] See *Alimchandani III*, supra, 363 Ga. App. at 534-536, 543 (3); *Alimchandani II*, supra, 359 Ga. App. at 274-276 (1).

[8] At the hearing, the trial court administered the auditor's oath to Cohilas over the defendants' objection in an apparent attempt to correct its failure to administer the oath when Cohilas was initially appointed as an auditor. But it is axiomatic that "an oral order is not final nor appealable until and unless it is reduced to writing, signed by the judge, and filed with the clerk." (Citation omitted.) *Wachovia Bank Savannah, N. A. v. Kitchen*, 272 Ga. App. 601, 602 (612 SE2d 885) (2005).

[9] In light of this resolution, it is unnecessary to address the defendants' claim regarding reports that Cohilas issued before we rendered our decision in *Alimchandani II*.

(b) We conclude, however, that the trial court erred by awarding fees to Cohilas to the extent that the award covered the time period after we reversed Cohilas' appointment in this matter.

"In Georgia, an auditor's fees shall be determined and fixed by the trial judge and they may be apportioned between and among the parties at the discretion of the judge. The fees of the auditor shall be assessed as court costs and shall be paid prior to the filing of any appeal from the judgment of the court." (Citations and punctuation omitted.) *Alimchandani II*, supra, 359 Ga. App. at 276 (2).; see also OCGA § 9-7-22 (c) (providing that the fees of an auditor "shall be assessed as court costs"). We have noted that the allowance of court costs must be statutory because such costs were not allowed at common law. *Hilderbrand v. Housing Auth. of City of Atlanta*, 109 Ga. App. 297, 299 (136 SE2d 24) (1964). While it is clear that OCGA § 9-7-22 makes provision for the payment of fees to an auditor to whom a case has been referred, we are unaware of any statute authorizing the payment of fees for work performed during a period in which an auditor was improperly referred to a case. Notably, however, in *Alimchandani II*, we addressed the issue of Cohilas' auditor fees, and we stated that we had "no opinion as to whether Cohilas [was] entitled to payment for work *already*

*performed*" in light of our reversal of his appointment.[10] (Emphasis supplied.) *Alimchandani II*, supra, 359 Ga. App. at 277 (2) n.23. And we note that we again remanded the case to the trial court to determine the appropriate fees Cohilas should be paid in *Alimchandani III*. See *Alimchandani III*, supra, 363 Ga. App. at 543 (3).

Here, in the trial court's final order, the court awarded $75,093.62 to Cohilas for the work he performed in this dispute. There is nothing in the order to indicate, and we are otherwise unable to determine from the record, whether this lump sum award was for the entirety of the work that Cohilas performed, including the period after we reversed the order appointing him as an auditor. Consequently, we must again remand this case to the trial court for its determination of the amount of fees to be awarded to Cohilas for the work that he performed before the reversal of the order appointing him as an auditor. And it follows from this conclusion that the defendants are entitled to reimbursement for any fees that were paid to Cohilas for the work he performed during the period after we reversed the order appointing him as an auditor.

------

[10] We had previously affirmed Cohilas' appointment in the first appeal before reversing his appointment in *Alimchandani II*. See *A&M Hospitalities, LLC v. Alimchandani*, 351 Ga. App. 310, 316-317 (2) (828 SE2d 615) (2019) ("*Alimchandani I*").

Accordingly, for the reasons stated above, we reverse the order directing that Lambros be compensated from the property that was held in the receivership. We vacate the trial court's order directing that Lambros continue to act as receiver and the order awarding fees to Cohilas, and we remand the case to the trial court to determine the appropriate fees to be paid to Cohilas for the work he performed during the time he validly served as an auditor. We otherwise affirm the trial court's final order and judgment.[11]

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded. Markle and Land, JJ., concur.*

---

[11] I am so very privileged and honored to have served the people of the State of Georgia on the Court of Appeals for the past 25 years. I would also like to thank my esteemed colleagues and fellow court personnel for making these past 25 years such a meaningful experience.